UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

— against —

TISLAM CATO,
            Defendant.

No. 16-CR-326 (ARR)

**Not for print or electronic publication**

**Opinion & Order**

---

ROSS, United States District Judge:

Defendant Tislam Cato, through counsel, moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The government opposes. For the reasons set forth below, Cato's motion is denied.

## BACKGROUND

On August 29, 2017, Cato pleaded guilty to conspiracy to engage in the business of dealing in firearms without being a licensed dealer in violation of 18 U.S.C. §§ 922(a)(1)(A) and 924(a)(1)(D), and 18 U.S.C. § 371. Presentence Investigation Report ¶ 1, ECF No. 289 ("PSR"); Criminal Cause for Pleading, ECF No. 246. As a member of the Gangsta Killer Bloods gang, Cato participated in a conspiracy to traffic firearms from Georgia and other southern states for sale in the Eastern District of New York and elsewhere. PSR ¶¶ 3, 8, 10. Cato was one of the most prolific distributors, helping facilitate the transfer of firearms to customers in New York. *Id.* ¶ 10. I sentenced Cato to 60 months' imprisonment followed by three years of supervised release. Judgment, ECF No. 437.

Cato has an extensive criminal history. As a teenager, he was convicted of three separate

felony narcotics offenses, including possession of crack cocaine and sale of a controlled substance. Gov't's Letter Resp. Def.'s Mot. Compassionate Release 10, ECF No. 524 ("Gov't's Resp."). In 2007, Cato committed a gang assault in Virginia, during which he and four other gang members assaulted a victim and stole his cell phone. *Id*. Cato also has a history of disciplinary infractions—including violent conduct and weapon possession—while in prison, as well as a history of probation violation. *Id.*

Cato is currently incarcerated at FCI Petersburg Medium and has served more than two-thirds of his 60-month sentence. Def.'s Mot. Compassionate Release 3, ECF No. 523 ("Def.'s Mot."). He is scheduled to be released in July 2021. *Id.* As of September 23, 2020, there are 43 confirmed active COVID-19 cases (40 inmates and 3 staff) at FCI Petersburg Medium, which houses 1,453 inmates in total. *COVID-19 Cases*, Fed. Bureau Prisons, https://www.bop.gov/coronavirus (last updated Sept. 23, 2020); *FCI Petersburg Medium*, Fed. Bureau Prisons, https://www.bop.gov/locations/institutions/pem (last visited Sept. 23, 2020).

Cato, age 39, suffers from several medical conditions. He alleges that he was born with a heart murmur that caused him to experience "constant shortness of breath" in his childhood. Def.'s Mot. 4; PSR ¶ 2. More recently, in 2016, Cato was shot in the back, which resulted in a collapsed lung, fractured ribs, extensive pulmonary contusion, and bullet fragments that remain lodged in his back. *Id.* at 4–5; PSR ¶¶ 72, 74. Less than two months after the shooting incident, Cato was severely injured in a car accident, resulting in a number of procedures and surgeries including the removal of 30% of his stomach. Def.'s Mot. 5; PSR ¶¶ 73–74. Cato reportedly still suffers from pain, memory loss, and difficulty walking as a result of the injuries associated with his car accident. Def.'s Mot. 5.

On June 29, 2020, the warden at FCI Petersburg received Cato's request for a reduction

in his sentence and denied that request on July 9, 2020. Def.'s Mot. Ex. 1.

## STANDARD OF REVIEW

The First Step Act allows prisoners to move for compassionate release from prison when "extraordinary and compelling reasons warrant" such release. 18 U.S.C. § 3582(c)(1)(A)(i). The statute reads:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

*Id.* Thus, there are four prerequisites to a court granting compassionate release under the First Step Act. First, the defendant must have exhausted his administrative rights. *Id.* § 3582(c)(1)(A). Second, the court must find that "extraordinary and compelling reasons warrant" release. *Id.* § 3582(c)(1)(A)(i). Third, the court must consider the factors set forth in § 3553(a). *Id.* § 3582(c)(1)(A). Fourth, the court must find that release is consistent with the Sentencing Commission's policy statements. *Id.*

The Sentencing Commission has issued a Policy Statement that defines "extraordinary and compelling reasons." U.S. Sentencing Comm'n, U.S. Sentencing Guidelines Manual § 1B1.13 (2018) ("U.S.S.G."); *see United States v. Ebbers*, 432 F. Supp. 3d 421, 427 (S.D.N.Y. 2020); *United States v. Bellamy*, No. 15-165(8) (JRT) (LIB), 2019 WL 3340699, at *2 (D. Minn. July 25, 2019). Under this Policy Statement, extraordinary and compelling reasons may exist based on the defendant's "medical condition" if the defendant is "suffering from a terminal illness," U.S.S.G.

§ 1B1.13 cmt. 1(A)(i), or "(I) suffering from a serious physical or medical condition, . . . (II) suffering from a serious functional or cognitive impairment, or . . . (III) experiencing deteriorating physical or mental health because of the aging process" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which [the defendant] is not expected to recover," *id.* cmt. 1(A)(ii). Extraordinary and compelling reasons may also exist based on the defendant's age if "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id.* cmt. 1(B). Further, extraordinary and compelling reasons may exist based on "family circumstances" in the event of "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." *Id.* cmt. 1(C). Finally, extraordinary and compelling reasons may exist if, "[a]s determined by the Director of the Bureau of Prisons, there exists . . . an extraordinary and compelling reason other than, or in combination with," the other listed reasons in the Guidelines. *Id.* cmt. 1(D). "[A]n extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." *Id.* cmt. 2.

This Policy Statement "is at least partly anachronistic" because it predates the First Step Act itself. *Ebbers*, 432 F. Supp. 3d at 427. Some district courts have concluded that the court may make an "independent assessment" of whether "extraordinary and compelling reasons" for release are present, looking to the Policy Statement only for "guidance." *United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019); *see also, e.g.*, *United States v. Young*, No. 00-cr-00002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) ("[T]he district courts themselves have the

power to determine what constitute extraordinary and compelling reasons for compassionate release."). *But see Ebbers*, 432 F. Supp. 3d at 427 (deeming Policy Statement "helpful in defining a vague standard" and concluding that its "descriptions of 'extraordinary and compelling reasons' remain current").

Even when a court determines that extraordinary and compelling reasons exist, it must weigh those reasons against the 18 U.S.C. § 3553(a) factors. *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. Weeks*, 16-CR-167 (LAP), 2020 WL 1862634, at *3 (S.D.N.Y. Apr. 14, 2020) ("Regardless of the theory of 'extraordinary and compelling reason' that a defendant proceeds under, the 18 U.S.C. § 3553(a) factors are relevant to whether compassionate release is warranted."); *United States v. Gotti*, 433 F. Supp. 3d 613, 615 (S.D.N.Y. 2020) ("The court confronted with a compassionate release motion is still required to consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances."). The § 3553(a) factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>  (B) to afford adequate deterrence to criminal conduct;
>  (C) to protect the public from further crimes of the defendant; and
>  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range [provided for in the U.S.S.G.] . . . .
> (5) any pertinent [Sentencing Commission] policy statement . . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The court must also consider whether release is consistent with the Sentencing Commission's policy statements. *See id.* § 3582(c)(1)(A)(ii). In particular, it must determine that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). The § 3142(g) factors are largely duplicative of those in § 3553(a). *See* 18 U.S.C. § 3142(g). In addition, they require the court to consider "whether the offense is a crime of violence," "the weight of the evidence against the [defendant]," and "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." *Id.* § 3142(g)(1)–(4).

The defendant bears the burden of demonstrating that he is eligible for compassionate release. *See United States v. Rivernider*, No. 10-CR-222 (RNC), 2019 WL 3816671, at *2 (D. Conn. Aug. 14, 2019). Even if a defendant carries this burden, "[d]istrict courts have broad discretion in deciding whether to grant or deny a motion for a sentence reduction." *United States v. Tagliaferri*, 13-CR-115 (RA), 2019 WL 6307494, at *3 (S.D.N.Y. Nov. 25, 2019) (citing *United States v. Jefferson*, 662 F. App'x 36, 38 (2d Cir. 2016) (summary order) and *United States v. Rose*, 379 F. Supp. 3d 223, 225–26 (S.D.N.Y. 2019)).

## DISCUSSION

### I. Administrative Exhaustion

A prisoner exhausts his administrative remedies after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). In this case, Cato submitted a request for sentence reduction to the warden at FCI Petersburg, who responded

within 30 days denying Cato's request and informing him of his right to "appeal through the Administrative Remedy Process." Def.'s Mot. Ex. 1. Cato has not indicated that he has pursued administrative appeal.

Waiver of the exhaustion requirement is justified where "[exhaustion] would be futile, . . . where the administrative process would be incapable of granting adequate relief ... [or] where pursuing agency review would subject [the person seeking relief] to undue prejudice." *Washington v. Barr*, 925 F.3d 109, 118–19 (2d Cir. 2019). "[U]ndue delay, if it in fact results in catastrophic health consequences," can justify waiving an administrative exhaustion requirement for any of those three reasons. *Id.* at 120–21. As relevant here, courts have found waiver to be justified based on the existence of a COVID-19 outbreak at the facility where the defendant is being held, combined with a medical condition that places the defendant at risk of suffering severe complications if he were to contract COVID-19. *See, e.g.*, *Sawicz*, 2020 WL 1815851, at *2; *United States v. Zukerman*, No. 16-CR-194 (AT), 2020 WL 1659880, at *4 (S.D.N.Y. Apr. 3, 2020); *United States v. Colvin*, No. 19-CR-179 (JBA), 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020); *United States v. Perez*, No. 17-CR-513-3 (AT), 2020 WL 1546422, at *3 (S.D.N.Y. Apr. 1, 2020).

As of September 23, 2020, there is a COVID-19 outbreak at FCI Petersburg Medium, where over forty cases have been confirmed. *COVID-19 Cases*, Fed. Bureau Prisons, https://www.bop.gov/coronavirus (last updated Sept. 23, 2020). However, as discussed below, Cato has failed to provide sufficient evidence to support his claim that he suffers from a medical condition that places him at high risk of serious illness if infected with COVID-19. Given that Cato has not demonstrated a risk of "catastrophic health consequences," I do not find that a waiver of his administrative remedies is justified.

## II.        Extraordinary and Compelling Reasons

Cato argues that his preexisting medical conditions, combined with the high risk of COVID-19 infection at FCI Petersburg Medium, constitute extraordinary and compelling reasons for release. I recognize that COVID-19 continues to pose a real risk to this country's imprisoned population, even despite measures that the government asserts that BOP is taking to combat the spread of the disease. *See* Gov't's Resp. 5–7. In this case, however, Cato has failed to demonstrate that he would be at high risk of serious illness in the event that he became infected with COVID-19.

According to the CDC, chronic lung diseases "may increase your risk of severe illness from COVID-19." *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Sept. 11, 2020). Courts in this circuit have repeatedly found that medical conditions increasing one's risk of severe COVID-19 complications constitute an extraordinary and compelling reason for release. *United States v. Parra*, No. 13-CR-784 (RA), 2020 WL 4586789, at *3 (S.D.N.Y. Aug. 10, 2020); *see also United States v. Benitez*, No. 18-CR-390 (PAE), 2020 WL 4226590, at *3 (S.D.N.Y. July 23, 2020) (finding that defendant's asthma constituted an extraordinary and compelling reason for release); *United States v. Butler*, NO. 18-CR-834 (PAE), 2020 WL 4004175, at *2 (S.D.N.Y. July 15, 2020) (finding that defendant's asthma and obesity constituted an extraordinary and compelling reason for release).

Cato alleges that he suffers from a "long-term respiratory disability" stemming from the "acute respiratory distress syndrome" associated with his 2016 pulmonary contusion. Def.'s Mot. 4–5. As a result, he allegedly wakes up "gasping for breath and crying for assistance" many nights. *Id.* at 5. If Cato does indeed suffer from a chronic respiratory disease, I would find that

this constitutes an extraordinary and compelling reason. However, although Cato has provided evidence of his 2016 pulmonary contusion, Def. Mot. Ex. 2, he has not provided any support for his claim that this contusion resulted in a chronic respiratory disease. Cato cites a medical article finding that a pulmonary contusion can lead to acute respiratory distress syndrome ("ARDS") in some patients. Def.'s Mot. 5 n.4. But the mere existence of this possibility is not enough to show that Cato's lung contusion did, in fact, develop into ARDS. Cato's medical records from the Bureau of Prisons, provided by the government, show that Cato complained of nighttime shortness of breath and chest tightness once on May 27, 2019, but also that he described these symptoms as a "new issue." Fed. Bureau Prisons Medical Records 22, ECF No. 525-1.

Courts have found that in cases where the defendant has failed to establish a high-risk preexisting medical condition, compassionate release was not justified despite the increased risk of COVID-19 infection in federal prisons. *See, e.g.*, *United States v. Belle*, No. 18-CR-117 (VAB), 2020 WL 2129412 (D. Conn. May 5, 2020) (determining that defendant's lung tissue scarring did not constitute an extraordinary and compelling reason for release due to the lack of evidence that the condition "caused him any particular respiratory issues"). Without any evidence showing that Cato suffers from a chronic lung condition, I cannot find that he is at increased risk for serious illness if infected with COVID-19. Therefore, Cato has not satisfied the "extraordinary and compelling reasons" element of his compassionate release motion, and his motion must be denied.

### III.   Section 3553(a) Factors and the Sentencing Commission's Policy Statements

Even if Cato had demonstrated that he is at high risk for COVID-19 complications, I would still find that the Section 3553(a) factors and the Sentencing Commission's policy statements strongly disfavor his release. In particular, the nature and circumstances of Cato's

offenses are serious. *See* 18 U.S.C. § 3553(a)(1). Cato was a "prolific distributor[]" of illegal firearms in a gang-led gun trafficking conspiracy, and helped bring a significant number of guns into New York. PSR ¶ 10. Furthermore, he has a long history of violent conduct and probation violation, Gov't's Resp. 10, making him a potential threat to the safety of others if he were to be released early, *see* 18 U.S.C. § 3553(2)(C); 18 U.S.C. § 3142(g). Given the serious nature of Cato's offense and his history of crime and violence, a reduction in his sentence is not justified.

## CONCLUSION

For the reasons set forth above, Cato's motion for compassionate release is denied.

SO ORDERED.

Dated: September 24, 2020
       Brooklyn, NY

                                             /s/
                                         Allyne R. Ross
                                         United States District Judge